The next matter, number 25-1575, Molly Cosel v. Jeffrey C. Wendt. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. Good afternoon, your honors, and may it please the court. My name is Chris Hennessey on behalf of the defendant appellant, Jeffrey C. Wendt, as trustee of the William G. Wendt 2022 Family Trust. I would like to reserve two minutes for rebuttal. Your honors, this is a creditor's rights case. The primary error of the district court was its conclusion that a Massachusetts probate court has jurisdiction in a divorce action to completely extinguish the property rights of a non-party lien creditor. Well, there's another way to read it, which is that when Will was ordered to deed his tenancy by the entirety portion over to Molly, he deeded all of it. And then upon the divorce, which acts like the death, Will's rights and along with it the creditor's evaporated. That's how I actually read what Judge Mastriani said. That's exactly what he said. He said that the expectancy interest goes away. Any creditor's expectancy interest goes away. If the divorce court orders the husband to deed the entire property to the wife, the entire creditor's interest goes away. And there is no case in Massachusetts that supports that. And Judge Mastriani acknowledged that. And in fact, there are multiple cases that say the opposite. I cited In Re Hull, which was a bankruptcy decision, which says the probate court has no jurisdiction to order conveyance free and clear of a valid mortgage. So what's very weird in this case, when I really read what the probate judge did, what the appeals court affirmed that I understand the parents here were not parties to, it seemed like the ruling was this was a sham. And it was first a gift. And then when they realized it was a divorce, they were trying to, whether you agree with that or not, that's not how Judge Mastriani decided the case. Now, it seems like Feldman versus Feldman, if your clients were the parties to this and you litigated that whole thing and it was determined to be a sham, Feldman seems to hold that the probate judge could invalidate the attachment. But Judge Mastriani says that's not what we have, or I can't decide that here. There's disputed facts about that. And so he's deciding, as a matter of law, the divorce essentially acts like the death, right? Correct. He's conflating the fundamental right of survivorship, which is what the tenancy by the entirety essentially stands for. He's pulling in now a divorce court's authority to completely extinguish her rights. The Feldman case is very important because the creditor was a party. The court made credibility determinations about the validity of the debt. The creditors in this case sought to intervene in the divorce case to protect. They predicted the issue that this question of a sham debt would come up. And they sought to raise all kinds of arguments. And, by the way, in the record in this case, that was the trial we were essentially preparing for. We had statements of an accountant, an affidavit of an accountant talking about this being a loan in 2018 before any knowledge. There was multiple- So there's some law in the world that wasn't cited here. But, I mean, it's a New Jersey case that's a lower New Jersey court that held, you know, that you have a kind of a reduced kind of creditor's interest in these situations. Because they already know they're taking it subject to the right of survivorship. And then you have a divorce, and you have the goal of equitable distribution, and you have this spouse that wasn't involved in the debt, and they may need the property. And so you have a conflict between the rights of the creditor and the interests of the probate court in helping the spouse that needs the help who's the non-debtor spouse. And that court said, all things being equal, we favor the ability of the probate court to do this because that's a better outcome given that this creditor's interest was already somewhat diminished because of what a tenancy by the entirety is. What is wrong with that way of thinking about it? Well, it goes completely opposite. So the SJC under Caraccio followed the New York Court of Appeals in VRW versus Kline. That's cited in my brief. Kline says exactly the opposite of what – It does. And in Ray Hall, the case also cited the Massachusetts bankruptcy case, which says a divorce court – Yeah, but that's like, you know, that's a Massachusetts federal bankruptcy decision. Understood. But I think the fundamental problem is the unintended consequences, which was predicted by the probate court in this case, of bringing every creditor now into a divorce action to try to preserve their rights and show a valid debt. In fact, the probate court was very careful in its decision. It ordered indemnification by will. It ordered will to transfer his entire right, title, and interest subject to, again, contempt of court, indemnification. Its order was between a husband and wife. It did not affect a nonpartisan creditor. But it has an odd situation of forcing, potentially, the wife, who the probate court wants to have this house, to have to sell it, or it gets sold as a partition, and they get the money. But they do have to leave the previous marital estate. That is the outcome of Kline, which may be right. I don't know. But it's a harsh result. I don't believe so, Judge, because what the wife takes is a unitary interest subject to that prior existing lien. And Caraccio, the SJC case, says that. But they would have taken it with a right of survivorship that would have let them stay in that house. And now they've lost it because of the divorce. And so now they're in worse off than they were if the tenancy by the entirety had remained. Well, upon divorce, the tenancy by the entirety is terminated. And then the wife would take the property subject to that prior existing lien. It may be a harsh result. But Caraccio says that one spouse may encumber the interest of the property without the knowledge or consent of the other spouse. Right, but that one, putting divorce to the side, is comforted by the fact that as long as I live in this house and live, that's not going to affect me. Once the divorce happens, the tenancy by the entirety is terminated, and the creditor can proceed on the property even if it's owned solely by the non-debtor spouse. Well, I mean, that's the issue. Suppose the husband just died. What about the creditor? Absolutely different. There's one risk a creditor has, and that is the death. And the sacrosanct right of survivorship is laid out in all the cases we've cited, Minkina, Snyder. So that's the key, right, that what Judge Mastroianni did is inserted a second risk to a creditor. It's not only death, by the way, or you should have known it was death. But by the way, it's also divorce. Right, and it could be now agreement by the parties. They could have an agreement. There's three ways a tenancy is terminated. Death, divorce, or agreement of the parties. Death is different, and that's what the cases say. That's what every case says. Well, take a divorce. Suppose the couple has a lot. They have a tenancy by the entirety, and they get divorced. What happens? I'm sorry. What was the question? Sure. The couple has a lot, tenancy by the encomity, and they get divorced. Doesn't that tenancy by the entirety disappear? Yes, and it becomes a tenancy in common, and they have a 50% interest each. And so what happened here? How do you view, how would you frame it? So prior to the absolute judgment of divorce, Judge Mastroianni orders Will to transfer his interest over to Molly. The divorce is not yet final. So at that moment, what does Molly have? Molly has an encumbered, a 100% interest in the property with 50% of the interest encumbered by the creditor. And then upon divorce, well, it's already over, right? I mean, in this case, it's actually no longer a tenancy by the entirety at the moment the divorce is absolute because the judge ordered the transfer of the property during the marriage still, correct? Well, the divorce effectively, the divorce decree effectively terminates the tenancy by the entirety. That is clear. And so upon the divorce decree, the tenancy by the entirety is terminated. Molly has a 100% interest in that house, 50% of which is encumbered by the prior perfected lien creditor, who, by the way, had no ability to participate in any of the proceedings to protect that debt, which is the fundamental unfairness issue here. I didn't get into necessaries, but I can address it on rebuttal. Why would we not treat divorce as equivalent to death since both eliminate the justification for this rather unique form of owning property? Well, firstly, the whole purpose of 209 Section 1 is the right of survivorship. It was enacted for that very purpose. By conflating in and bringing in the principles of right of survivorship, it really causes a mess, frankly, because death is clean. Someone dies. The debtor spouse dies or the non-debtor spouse dies. At that point, a creditor's interest is either zero if the debtor spouse dies or it's 100% if the non-debtor spouse dies. It's a very clean and simple test. Now, if you extend that rule to divorce, agreement by the parties, you're going to have a very messy situation with creditors coming in. We would have been allowed to intervene in this case and present evidence if the judge had any reason to believe that our interest would have been affected. The probate court was clear about the fact that its order did nothing to vitiate the rights of the prior perfected lien creditor. Hull is directly on point. The case of Hull, I understand. I guess I'm not sure about that because I agree there's some ambiguity about what the probate judge did, but do you agree with me that if the probate judge, maybe they did it wrong, but let's say your clients were in the case and they litigated it out and they reached the conclusion they reached without your parties being in the case, which this was a sham, then they could, do you agree, the probate judge could, under Feldman, eliminate the attachment? Yes, but the claim would have been a fraud collusive. Yes, a creditor would have, as a party to the action, have presented there's credibility determinations, but that would not be a summary judgment issue in this case. Judge Mastriani clearly said if we get into that issue, it's a question of fact. We need a trial on the issue. So if we're there, this case should be reversed and sent back for a trial. And yet the way Judge Mastriani kind of went through, got his way to the outcome, raises a general and seemingly important question of Massachusetts law, for which I did a lot of extra Massachusetts research, seems to have different outcomes in different jurisdictions. And, you know, Hull, okay, but there's not a directly on-point case. It's a big move to say a divorce is like a death. It's absolutely unprecedented in this state. And yet we can't say it's right. We can't say it's wrong. I read some cases from other places that said that's a good rule, and other courts say that's a bad rule. So, I mean, it's an awkward position for the federal court to be doing that. I mean, no one asked for certification, and the weirdness is you have the fraud thing lurking in the background. But if you didn't have that, it would seem like this would be a good case to have the SJC say should divorce be treated like death. I think it's a very important fundamental question in the tenancy by the entirety statute. What I would suggest is Caraccio follows the New York Court of Appeals. That case is said. I agree that Caraccio is only citing Klein for the proposition that a debtor spouse can encumber a tenancy by the entirety, not what happens after. Without knowledge. That's correct. But then Klein goes on to talk about what happens after a divorce. Caraccio did not have that. Correct. But Hall does, and I understand it's just a bankruptcy district court decision. But Hall goes on to explain what Klein says, why the prior mortgage survives the divorce even though the entire interest is conveyed to the non-debtor spouse. The secured creditors race under the race notice principle. It's a basic principle. If we record a lien, a prior perfected lien, it's on record and everyone's on notice. A subsequent divorce court has no authority to vitiate or extinguish the rights of that prior perfected lien creditor, especially a non-party. Thank you.  Thank you, Counsel. At this time, would Counsel for the Appellee please introduce himself on the record to begin? Good afternoon, Your Honors. Dennis LaRochelle on behalf of the Plaintiff Appellee, Molly Cosell. May it please the Court, there really are three points in total in which the Court has to focus in order to determine what to do with this appeal. First, there's the question that you spent the last ten minutes talking about, how much interest did Will have in the property both during the marriage and after the divorce? Because the trust, the only interest the trust has in the property derives from Will's interest, and therefore the trust cannot have more interest in the property than Will had. The second point is the question of whether the loan, and I know Attorney Hennessey said he's going to talk about this on rebuttal, so I better talk about it now because I don't get a rebuttal, is a question of whether a $1 million loan to the father, to Will, for the construction of a photography studio on this property could be considered a necessary under Massachusetts law so that that debt could be made joint. Well, that omits part of it. It wasn't just a photography studio. It was a photography studio slash temporary residence while we rebuild this barn into something I'm assuming pretty fabulous. Absolutely. Well, not hopefully absolutely fabulous, but that's absolutely correct, Your Honor. I don't disagree with that. So then why wouldn't that be a necessary? I mean, it seems to me the idea was that's where they're going to live for some extended period while they do a major renovation on another part of the property. Well, because a necessary requires. A necessary does not mean it just has to be an essential, food and things like that. The courts have determined it means more than that. But it has to be something that's important, that's necessary, that's needed, for this family to maintain its standard of living in accordance with Molly, because she's the one we're trying to shift this debt to, in accordance with Molly's income. Well, this all happens before they're divorced. So Molly has married into the Midwest metal fabricating fortune, and so she's part of that, and she's living a life like that before they get divorced, and they're going to make the barn something really great, and meanwhile they're going to live in the studio that's studio slash apartment, and they're going to buy really nice appliances to live in it, because they're connected to some pretty wealthy people. Well, during the marriage, even if we looked at the total income, right, Molly made no more than $80,000 a year. Will was making $100,000 a year working for his father. The rest of the money came from the father. It didn't come from them. There was $1.9 million that Will contributed himself. It came from the family resources, and then there was this extra. It looks like, I mean, I guess this is where the necessaries issue gets a little muddy to me. I mean, it looks like they are part of, or Will is part of, a rich family with parents who are willing to share, and they are sharing, and whether it's loans or gifts, there's a lot of money coming in from the parents that are creating a lifestyle expectation of these people that are biking stoves and Sub-Zero refrigerators, and do we take account of that? Judge Mastriani called that opulence, but I could call it I am lucky to be the child of some rich parents, and I get to live that way, and necessary law seems to understand that because that's my station by the fortune of my birth. Well, the station of these parties during their marriage was they were living in a barn. They were living in a barn that was given to them. It's not all a matter of characterization for somebody, some fact finder to decide which of these two world views it is. Agreed, but I will tell you that they were living in this barn that was given to them by Molly's parents. There was absolutely no expense by Molly or Will to purchase that property. It was given to them for free. Their station in life was hopefully to improve if they took money and built an opulent or a big studio that they could live in temporarily, and then maybe after that take more money and build a really big house, but that was not their current station in life. Everybody in this courtroom has a desire to have a higher standard of living than they currently have, but that's not what's necessary. But if you have rich parents, you have a much better chance of getting it. I'm sorry, Your Honor? But if you have rich parents, you have a much better chance of getting it. You do if you remain on good relations with those parents and they continue to be generous. That's absolutely true. You're just saying that shouldn't come into the necessaries evaluation. It should not, and especially it should not because that opulence, that wealth, is coming from Will's side of the family, and we're trying to shift this debt, or they're trying to shift this debt, to Molly. So if we take the rich person, it doesn't... Was this a necessary when they were a married couple not considering divorce? Like at the time the parents give the money to the couple, did the husband use it for necessaries? And the answer could be yes, he used it, one, to make the studio nice, two, to improve the driveway and septic for the barn that they're planning to live in, and that's what he used the money for. And that, assuming they stayed married, very much would have benefited Molly in the sense of her shelter, and so that's what makes it a necessary. It would have benefited her, therefore it makes it something useful to the family. It does not make it a necessary. And that's because of how opulent it was? That's correct, Your Honor. Okay. It was well beyond the ability of these parties to pay back that debt. If we were to rule for the appellant, what happens to the money that was allocated towards the husband by the court at the time that it was allocated to Molly, all the interest in the property? Is that understood? That's a very good question, Your Honor, and there is actually a motion pending in the probate court to kind of answer that question about when that $250,000 is actually due. I would suggest that if, in fact, you root for the appellant and we went back to the trial court and then the trial court, after a trial on the merits of whether the loan was a sham or not, it turns out that the loan was not a sham and that Molly is responsible for it and the property has to be sold, I would assume the probate court would then revise its judgment and say, well, I only ordered $250,000 being paid from Molly to Will on the assumption that Molly was keeping the property. Now that Molly is not keeping the property, I would assume Will would not get that $250,000. Has that position been opposed by the opposing party? The motion we have in right now is a delay. We've asked the court, the probate court, to delay Molly's payment. It was supposed to be due five years after the judgment minus a couple days, so we're asking that it should be due five years after the resolution of this case because Molly can't do anything to monetize that property. She can't lease it out. She can't do anything with it. We're asking the court to try to earn that $250,000 that she would need to pay out. So the motion before the court right now is to delay the payment until the end of this litigation. The other side has opposed it. The hearing is set for later this month, as a matter of fact. That sounds inequitable for the other side to say that they get the husband's interest in the property, but he also gets to keep the money that was in effect paid for that interest. That specific issue hasn't come up yet. We're only talking about the timing right now. I would hope that they wouldn't oppose that, but I can't predict. It's too early to say because you don't know the status of the property, right? Exactly, Your Honor. So what about the main, the lead issue, which is why should, so basically as I understand Judge Mastriani, he treated divorce as if it were death. He didn't. You're right, Your Honor. There is a lower New Jersey court case that wasn't cited that basically said that's the right thing to do. What I think opposing counsel is missing, what I hope Your Honors is not missing, is that there's nothing that Judge Mastriani did or could do, nothing that the probate court did or could do that actually vitiates the attachment. The attachment, the lien, is not against the property directly. It's against Will's interest in the property. So this attachment is still out there. The judgment against Will is still valid. We've never challenged the judgment against Will. The fact that the property is now, that Will's interest in the property is now worth nothing, doesn't change the fact that there's an attachment. It is a circumstance that is known to anybody who is going to be lending money to one party out of an entity. But you agree under Caraccio, Will, putting aside any sham thing, which we're putting totally to the side, assume this was a bank, not the parents. Under Caraccio, it was completely legitimate for Will, without Molly's knowledge, to encumber his tenancy by the entirety. To encumber his interest in the tenancy by the entirety. His interest in the tenancy by the entirety. And then probate judge orders, as part of divorce decree, that that interest be given to Molly. Correct? That the entire property be given to Molly. Correct. Which requires Will to communicate his interest to Molly. Correct? Obviously, I think. Well, the court does that. He doesn't communicate his interest. He doesn't have to. No, the court judges it. His interest disappears. So then is there power in the probate court to say, I give it all to Molly except for the encumbrance that Will lawfully put on it? Will lawfully, under Caraccio, put an encumbrance on it. And then the probate judge says, I'm transferring it all to Molly except for the lawful encumbrance that you put on it. Will put an encumbrance on his interest in the property. He did not put an encumbrance on the whole property. His interest ultimately is going to be decided by which spouse dies first or by whether there's a divorce decree or not, which orders that property to go to one party or the other or splits between them. So his interest at the time the investor gave the money, his father gave him the money, might be worth a lot of money. It might be worth nothing. In some sense, it's like buying a lottery ticket. You're saying his interest is whatever he gets in the partitioning. That's correct. Well, in the division because of the divorce, not a petition to partition. But in the division because of the divorce. I mean, because there are cases in the world that are not consistent with that theory, right? I mean, Klein isn't really consistent. Klein is not, but Klein is in New York. I'm not saying it is. I'm just like, but we're trying to figure out Massachusetts law. So I found there's a New Jersey case that's very consistent with what you're saying. There's a New York case that's inconsistent with the line of thinking that you're saying. And the problem is there's also an interesting New Jersey Supreme Court case, Freda, that kind of takes a half position on all this because the creditor, and, again, I want to take it out of parents and just make it a bank. Like the bank's interest is snuffed out. And they know going in it can be snuffed out for when the debtor spouse, when the non-debtor spouse survives the debtor spouse, right? But where's the law that says, and it's the same for divorce, which is the linchpin of Mastriani's decision? Well, I think companion peoples both get you almost all the way there. They don't get you all the way there, but they get you 99% of the way there. But the other part of it is it's the only thing that makes sense. If a bank or if a father wants to make sure that that investment is secure, you get both parties of the tenancy of the entirety to sign on the promissory note. That was not done here. There's a reason that was not done here. Which a lot of states require. Absolutely. And Massachusetts isn't one of them. It does not require it, but the lenders know it and the lenders do it. But that would then give each spouse the ability to veto the other spouse's ability to encumber the property. Well, it would if the lender insisted on it. That's correct. And that's not a bad thing because what we're going to end up doing is try to get the poorer spouse to be liable for this huge debt. It's probably a good idea. Because your point is in real life banks don't give mortgages on to one. They don't usually do what Caraccio allows. I can't say they've never done it, but I haven't seen it. Okay. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. Thank you. Chris Hennessey on behalf of the defendant appellant. I just want to hit on a couple of things brought up. The divorce court at Record 163 ordered Will to convey, to quote, transfer to Molly a deed conveying all his right title and interest in and to the property. That's an encumbered interest. And the court went on to say, Will shall indemnify Molly for the collection action against the non-party creditor. So the court did order a transfer of the deed from Will to Molly. Did they mean indemnify like this is still an attachment that's alive and well? Or if there are more shenanigans by these parents and this trust to, I'll use the word harass, Molly, they're going to pay for doing that to Molly. I mean, it's not clear to me what the probate judge really meant by that. Well, you brought up the $250,000. What's the court order to normalize that? The court ordered that paid after five years. It's not been paid yet. Has continuing jurisdiction over these parties and can certainly come in on a motion for modification, which is pending now in the probate court and reallocate the assets. If the Molly was saddled with a huge legal bill, which the court has ordered Will to pay Molly in the underlying divorce court, it has all kinds of jurisdiction and it has contempt of court power. So the only power that the divorce court has, though, is as between a husband and a wife. It does not have authority or jurisdiction over a non-party. And I want to hit necessaries because I didn't talk about it. A multimillionaire, a limousine is a necessary. That's what the Black's Law Dictionary says. Don't forget there was almost $2 million gifted. That is not part of what's in dispute. This is over a $3 million improvement. $2 million was part of the trust that was brought to build this house. So the notion that subzero refrigerators and things that are part of the marital property cannot be necessaries is contrary to the clear law on the station in life and what a necessary is. And I guess they're saying it's not a station in life. It's they got lucky to get a gift. There's no guarantee for more gifts. So, yeah, sure, they chose to take the gift and spend it lavishly. That's not really a necessary. Well, again, if we're in this argument, we're in a question of fact. The cases say necessaries often are a question of fact, not ripe for summary judgment. So Judge Mastriani's order that this was opulence over necessity in and of itself begs this material question of fact, which is another independent basis to deny summary judgment. What are you actually fighting over? If you win eventually, then the domestic court could just reallocate who pays what and who indemnifies who for what, and you all end up back in the same place financially. Well, just to be clear, and I think there was questions about who. I represent the creditor, not Will. So Will is a party to the divorce. Yeah, but we're not blind to the relationship between the creditor and Will. I'm sorry? I don't think we're blind to the relationship. No, my point is just as any prior perfected lien creditor, we have an interest in the property. So if we are successful in this outcome, we can force a sheriff's sale. We can order it sold. The property can be sold. Molly can certainly redeem. The divorce court has authority to order Will to stop that from happening, subject to contempt. So there is discretion by the divorce court, but that's as between Will and Molly. This is a big deal, I presume, because it's part of Molly's parents' property originally. To have that sold would be significant. Correct. In a fundamental sort of realistic way. Understood. Yes, but at the end of the day, a bank that has a mortgage on a family property can execute it on its mortgage. A credit card company, someone who gets in a car accident and only has the right to go after a judgment against one party, can enforce its lien rights. Thank you. That concludes argument.